IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN WHERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 15-cv-419-CJP[1] |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff John Wherry seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in September 2012, alleging disability beginning on August 13, 2012. After holding an evidentiary hearing, ALJ Jessica Inouye denied the application on December 23, 2013. (Tr. 15-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

Plaintiff was represented by counsel when he filed suit, and counsel filed a

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 11.

brief on his behalf. Counsel sought leave to withdraw, at plaintiff's request. Leave was granted. See, Docs. 25-28. Plaintiff is now pro se.

## **Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. The ALJ erred in weighing the opinion of his treating physician, Dr. Randall Roush.

2. The ALJ's credibility analysis was erroneous.

## **Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009.

If the answer at steps one and two is "yes," the claimant will automatically be

found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Mr. Wherry was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this

Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Inouye followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2016.[3] She found that he had severe impairments of degenerative joint disease in the hips and avascular necrosis, which did not meet or equal a listed impairment.

The ALJ found that Mr. Wherry had the residual functional capacity (RFC) to perform work at the light exertional level, with a number of physical limitations. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because he was able to do jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is limited to the relevant time

---

[3] The date last insured is relevant only to the claim for DIB.

period.[4]

### 1.   Agency Forms

Plaintiff was born in 1975 and was almost 37 years old on the alleged date of onset, August 13, 2012.  A previous application for disability benefits had been denied in 1995.  (Tr. 216-217).

Mr. Wherry had a high school education.  He worked at Houlihan's Restaurant as a prep cook from 1995 through August 13, 2012.  (Tr. 221-222).

In a Function Report filed in September, 2012, plaintiff said that he lived with his family in his sister's apartment.  He said he did not prepare any meals or do any household chores.  He needed help dressing himself and getting out of the bathtub.  He needed help getting around and it hurt to even ride in a car.  (Tr. 231-245).

### 2.   Evidentiary Hearing

Mr. Wherry was represented by an attorney at the evidentiary hearing on October 16, 2013.  (Tr. 43).

Plaintiff testified that he was in a car accident, and was treated by a chiropractor thereafter.  After about five months, he still had pain in his hips.  He saw Dr. Roush, and was diagnosed with avascular necrosis.  He had surgery on both hips.  He continued to have pain in his hips, buttocks, low back, and down his legs.  Dr. Roush gave him cortisone injections in both hips.  (Tr. 48).

Mr. Wherry testified that he had constant pain in his hips.  He lost his

---

[4] The ALJ found that plaintiff had some treatment for degenerative disc disease of the lumbar spine, but that it was not a severe impairment.  Plaintiff has not raised an argument relating to his lumbar spine condition.

insurance about three months before the hearing, and was unable to afford prescription medication, so he took Aleve. He also had shooting pain in his legs and stiffness and limited range of motion in his hips. (Tr. 50-51).

Plaintiff estimated that he could stand for 20 to 25 minutes at a time, and for a total of maybe 2 and ½ to 3 hours in an 8 hour day. He could sit for about 30 minutes at a time and for a total of maybe 3 hours. He was able to walk for not even half a block. (Tr. 52-53). He walked with a cane and had to go up and down stairs one step at a time. He walked with a limp. (Tr. 55).

At the time of the hearing, plaintiff was living with his mother in a second floor apartment. His mother was on disability from a knee replacement and back surgery. She paid the household bills. (Tr. 60). His mother did all of the cleaning and grocery shopping. He sometimes washed dishes, but had to do a few at a time. (Tr. 64).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which comported with the ultimate RFC assessment, that is, a person of plaintiff's age and work history who was able to do work at the light exertional level, limited to standing and walking for 2 hours total per day; no climbing ladders, ropes or scaffolding; only occasional postural activities, but no crawling or kneeling; only occasional bilateral pushing and pulling with the lower extremities, i.e., use of foot controls; and allowed to use a cane in the right hand while ambulating. The VE testified that this person could do light exertional jobs such as desk clerk and counter clerk. (Tr. 75-76).

    3.    **Medical Treatment**

Plaintiff was seen for left hip pain by Dr. Whiting in the Orthopedic Clinic at St. Louis University Hospital in St. Louis, Missouri, in April 2012. Dr. Whiting diagnosed avascular necrosis in both femoral heads. He noted that this condition would likely progress and that plaintiff would ultimately need hip replacements, but that surgery should be put off until plaintiff was older. He prescribed a nonsteroidal anti-inflammatory drug. (Tr. 318-319). Plaintiff returned in July 2012 with continued complaints of pain despite undergoing physical therapy and taking the medication. Dr. Whiting prescribed Celebrex and physical therapy. (Tr. 312-313).

Mr. Wherry saw Dr. Randall Roush in August 2012. An MRI showed avascular necrosis involving about 75% of the left femoral head and about 1/3 of the right femoral head. Both femoral heads remained round with no sign of collapse. Dr. Roush agreed that hip replacements would likely be needed in the future, but he recommended that core decompression be done first in view of Mr. Wherry's relatively young age. Dr. Roush performed core decompression of both hips on August 15, 2012. (Tr. 422-423, 474-476).

According to information in the medical records, in a core decompression procedure, "[A] surgeon removes the inner layer of bone, which reduces pressure in the bone and increases blood flow, allowing more blood vessels to form." (Tr. 305).

Dr. Roush saw plaintiff about two weeks later. He had some minor pain. He was using a cane. Dr. Roush told him he should still be using crutches with a four-point gait. He prescribed Percocet and instructed plaintiff to remain off work

until approximately November 6, 2012.  (Tr. 477-478).

Plaintiff returned to Dr. Roush at least four times.  On October 4, 2012, he was feeling less pain.  He was to continue using crutches, partial weightbearing.  (Tr. 494).  On October 24, 2012, he had no specific point tenderness about either hip and the range of motion of both hips showed no specific pain.  He was able to stand better on the left leg than on the right.  X-rays showed no sign of collapse.  He was using a cane.  Dr. Roush told plaintiff he could bear weight as tolerated.  (Tr. 491).  He noted that plaintiff was to remain off work until approximately December 10, 2012.  (Tr. 500).

On December 4, 2012, Dr. Roush wrote a note indicating that plaintiff had been seen in the office and was to remain off work until approximately February 4, 2013.  (Tr. 498).  There is no office note documenting a visit that day.

On January 30, 2013, plaintiff reported to Dr. Roush that he had improvement in his pain, but he did feel a dull ache.  On exam, range of motion was satisfactory and distal neurovascular function was intact.  Plaintiff wanted to try working four hours a day, and Dr. Roush agreed that he could try that.  He was again prescribed Percocet.  (Tr. 511-512).

The last visit to Dr. Roush was on March 27, 2013.  Mr. Wherry reported that he had been unable to return to his restaurant job which required standing throughout the day.  On exam, he had tenderness at both hips around the greater trochanter.  His legs were of equal length and he had satisfactory range of motion of both hips.  He was able to stand in a single legged stance on both legs.  Distal neurovascular function was intact.  X-rays showed that the core decompression

tracks had healed and both femoral heads remained round. Both femoral heads showed sclerosis. There was some degree of narrowing of the joint space with some degenerative joint disease in each hip. Dr. Roush injected both hips with Depo-Medrol. Mr. Wherry was to return as needed. (Tr. 507-508).

On April 3, 2012, Dr. Roush signed an application for a disabled parking permit for plaintiff. He checked a box to indicate that plaintiff was unable to walk 50 feet or more. He indicated that was a "permanent disability." (Tr. 502).

### 4. Dr. Roush's Opinion

On May 20, 2013, Dr. Roush completed a form entitled Physical Capacities Evaluation. His diagnosis was history of avascular necrosis of bilateral hips and degenerative joint disease of both hips. He identified plaintiff's symptoms as pain, tenderness of both hips and greater trochanter. He indicated that, in an 8 hour workday, plaintiff could sit for a total of 4 hours, stand for a total of 1 hour, and walk for a total of 1 hour or less. He would require alternating positions hourly. He could occasionally lift up to 10 pounds, and could never bend, squat, crawl or climb. He could reach above shoulder level only frequently, and had moderate restrictions of activities involving exposure to extremes of temperature and driving automotive equipment. He would need to take unscheduled breaks depending on his symptoms. (Tr. 503-506).

### 5. Opinions of State Agency Consultants

There was no consultative physical examination.

There was no RFC assessment completed by a medical consultant. The only RFC assessment in the file was completed by a "single decision maker," an agency

10

employee who is not a medical professional.  See, 20 C.F.R. §404.906(b)(2)(" In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met. The decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant. The medical or psychological consultant will not be required to sign the disability determination forms we use to have the State agency certify the determination of disability to us (see § 404.1615)."  See also, "Audit Report, Single Decisionmaker Model – Authority to Make Certain Disability Determinations Without a Medical Consultant's Signature," https:// oig.ssa.gov/ sites/default/ files/ audit/full/pdf/A-01-12-11218.pdf, visited on June 30, 2016.

This assessment was dated November 21, 2012.  (Tr. 83-91).  The agency employee wrote "After bilateral hip surgery, the claimant remains significantly limited.  He has shown improvement and is expected to continue to improve, but he is expected to remain limited for 1 year after AOD [alleged onset date]….The above noted limitations in this RFC reflect the claimant's projected capacities at 1 year after AOD."  (Tr. 90).  He concluded that plaintiff could do light work, limited to standing/walking for a total of 4 hours and sitting for a total of 6 hours; limited operation of foot controls in both lower extremities; occasional climbing of ramps and stairs; unlimited balancing, kneeling, crouching, and crawling; and frequent stooping.

## Analysis

Mr. Wherry first argues that the ALJ erred in weighing Dr. Roush's opinion

11

set forth in his May 2013 report.

Dr. Roush is, of course, a treating doctor. The opinions of treating doctors are to be evaluated under 20 C.F.R. §404.1527. Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). If is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527.

Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. §404.1527(d). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527.

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he may "bend over backwards" to help a patient obtain benefits. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). See also, *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

When considered against this backdrop, the Court finds no error in the ALJ's weighing of Dr. Roush's opinion. After reviewing the medical evidence, ALJ Inouye gave "some weight" to Dr. Roush's opinion. She explained that Dr. Roush's

evaluation conflicted with plaintiff's own estimate of his abilities. For instance, plaintiff testified at the hearing that he could stand for 20 to 25 minutes at a time, for a total of maybe 2 and ½ to 3 hours a day. Dr. Roush said that he could stand for only 1 hour total a day. Plaintiff testified that he could sit for 30 minutes at a time, for a total of maybe 3 hours a day. Dr. Roush said that he could sit for a total of 4 hours a day.

Plaintiff argues that Dr. Roush's opinion was not all that inconsistent with plaintiff's testimony, and suggests that plaintiff was only guessing at his abilities. This argument is not persuasive. Mr. Wherry is obviously in the best position to know how long he is able to sit or stand; the implicit argument that Dr. Roush would know better than plaintiff cannot be credited. Further, a comparison of plaintiff's testimony and Dr. Roush's opinion clearly indicates that there were several contradictions. The ALJ was entitled to discount Dr. Roush's opinion for that reason.

In addition, the ALJ gave Dr. Roush's opinion less weight because it was not supported by his own objective findings. Plaintiff complains that the ALJ failed to specify the contradictory findings. However, in her review of the medical evidence, which immediately precedes her analysis of Dr. Roush's opinion, the ALJ pointed out that Dr. Roush documented tenderness around the greater trochanter, but satisfactory range of motion of the hips, ability to stand single-legged on each leg, and intact distal neurovascular function. X-rays showed that the femoral heads remained round with no sign of collapse. Plaintiff points to nothing in Dr. Roush's treatment notes that would support the limitations he assigned.

An ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of another physician, internally inconsistent, or inconsistent with other evidence in the record. *Henke v. Astrue*, 498 Fed.Appx. 636, 639 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" her reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Court finds that ALJ Inouye more than met the minimal articulation standard here.

Mr. Wherry also argues that the credibility determination was erroneous. Specifically, he takes issue with the ALJ's conclusion that his allegations about the severity of his symptoms were not credible in part because he did not return to Dr. Roush after March 2013. Plaintiff testified that he lost his insurance about three months before the October 2013 hearing. The ALJ acknowledged this testimony, but stated that "there is no evidence that the claimant could not have obtained low cost or no cost medical care as necessary." (Tr. 21). He also criticizes the ALJ's reliance on his daily activities.

The Court must use an "extremely deferential" standard in reviewing an ALJ's credibility finding. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). The Court cannot reweigh the facts or reconsider the evidence, and can upset the ALJ's finding only if it is "patently wrong." *Ibid*. Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons

14

for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3. While plaintiff's claims cannot be rejected solely because they are not supported by objective evidence, 20 C.F.R. §404.1529(c)(2), the ALJ may take that fact into consideration, since "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Here, the ALJ discounted plaintiff's testimony because it was not supported by the medical evidence. She also pointed out that plaintiff claimed that his disabled mother did all of the household chores except that he sometimes washed the dishes, which she found implausible. She also noted that he had not returned to Dr. Roush since March 2013. She acknowledge that his insurance had run out, but also noted that he apparently had not sought free or low cost medical care.

With regard to his daily activities, plaintiff admits that his 2012 activity report described "more restrictive" activities that his 2013 testimony did. See, Doc. 21, p. 11. He seems to suggest that it was improper to base the credibility

15

determination on his daily activities, but this is incorrect. An ALJ is required to consider, among other factors, a claimant's daily activities in determining whether he is disabled. 20 C.F.R. §404.1529(a), SSR 96-7p, at *3.[5]

It is true that an ALJ must consider a claimant's lack of health insurance before concluding that a failure to seek treatment means that treatment was not needed. See, *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013), and cases cited therein. This does not translate into a blanket rule that an ALJ must accept as credible all allegations of a claimant who is without health insurance. The ALJ here did consider the fact that plaintiff lost his health insurance, but also noted that there was no indication that he had sought reduced cost or no cost care. Further, plaintiff testified that he lost his insurance about three months before the hearing. The hearing took place in October 2013. The ALJ could reasonably conclude that plaintiff's failure to return to Dr. Roush after March while he still had insurance indicated that plaintiff felt that he did not need to see the doctor again.

On the record before her, the ALJ reasonably concluded that the decompression surgery was generally successful in relieving most of plaintiff's symptoms. In light of the medical records and plaintiff's testimony, the ALJ's credibility determination was not "patently wrong" and so it cannot be overturned. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ

---

[5] Plaintiff does not argue that the ALJ impermissibly equated his limited daily activities with the ability to work full-time.

Inouye committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying John Wherry's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   July 1, 2016.**


                              <u>**s/ Clifford J. Proud**</u>
                              **CLIFFORD J. PROUD**
                              **UNITED STATES MAGISTRATE JUDGE**